Your Honors, my name is Robert Schlemmer, the attorney for the appellant Verica Zivkovic. The issue on appeal is accident. The commission decision, our position is that the commission decision that the appellant failed to prove accident was against the manifest weight of the evidence. I believe only one conclusion can be drawn from a reasonable review of the evidence. If you believe the petitioner fell while pushing multiple shopping carts, the petitioner proved that she sustained an accident on February 26 of 2002. Pushing multiple shopping carts into a corral in a department store is an employment risk. The evidence is clear on the side of the petitioner. The petitioner's testimony was, and she explained this in an answer to four different questions, that I took the carts, all of them together, I pushed the carts into the front of them. Then I slipped, fell, and hit something. What did the commission think? She was a good witness? The commission found that she wasn't credible, Judge. And my suspicion is that the respondent put that in their brief as sort of a throwaway. And as we see in many briefs we get at the commission, we see the attack credibility. 99% of the time it doesn't stick. In this case it did, and I don't think it was the correct thing to happen. So what should you have done? Should you have called it to their attention? Well, I did call it to their attention. In writing? I'm sorry? In writing? In my briefs, yes. Briefs to what? In my briefs during the appeal process, I did call it to their attention, and I stated the reasons why I didn't do it. Briefs to whose? The brief at the commission level, yes. But I don't believe in this instance the credibility determination is reasonable or fair, because when Arbitrator Cain was hearing the evidence in this case, the petitioner was testifying through a Bosnian translator. In my opinion, you can determine if someone's lying in two ways. One, the things that they're saying are just so far-fetched it must be a lie. But the second thing, it comes from observing body language and listening to what the person's saying and listening to the inflection and tone in their voice. And I don't know how Arbitrator Cain, who, as far as I know, doesn't speak Bosnian, could determine, based on what the words that this woman was saying and then what the translator was saying, if she was lying. Well, what would be the alternative you would suggest? There would be no other way to present a testimony but through an interpreter, correct? Yes, correct, Your Honor. What I'm suggesting is that the finding that she was credible, it just doesn't belong in this case, was not credible. Well, let's break that down a little bit. Does it really depend upon weighing the credibility, or is it a little more subtle than that? When the claimant got to the hospital, contrary to what you testified to before the arbitrator, she was unable to tell anyone what happened to her. She was diagnosed as having undergone a seizure. So isn't it equally plausible? Remember, the claimant has to prove the case that she had a seizure and it had nothing to do with the carts. It is, Judge, but if she had a seizure, there would have been medical treatment for a seizure condition after the date of accident, which there wasn't, so other than the diagnosis that appeared in the emergency room records when she was unconscious and unresponsive, there's no further mention or diagnosis of a seizure disorder or a fainting problem after the date of accident. The petitioner testified that she didn't have problems with fainting or with seizures before the accident, and no evidence was brought forth, no medical opinion was brought forth to show that she did suffer from seizures or fainting issues before the accident. Well, wouldn't the claimant be able to relate to the treating doctor at the hospital or the hospital personnel what happened? In her condition, she might not have been able to. But again, who has the burden of proof in the case? The petitioner has the burden of proof, and I think if you believe that she was pushing the carts and fell, clearly that's an accident because the act of pushing them. Well, not if she had a seizure and that caused her to fall. Correct, Judge. That's not compensable. If she didn't have a seizure and she was pushing multiple shopping carts, the act of pushing those multiple shopping carts put her at an increased risk of accident over the general public. That, in my opinion, would be compensable. Does she have to know what caused her to fall? Well, she testified that she was pushing the carts when she fell. But she didn't testify that the pushing of the carts caused her to fall. It happened to be what she was doing when she fell. But why did she fall? Did she trip on a crack on the sidewalk? Was there something wrong with the carpet? Why did she fall? Or she just fell? You know, some of us just trip on our own feet. The act of pushing the carts caused her to fall, or she had some medical issue while she was pushing the carts. If she fainted or had a seizure or had some medical issue while she was pushing the carts, I believe that this is still a compensable accident. Based upon what legal principle? Based upon the legal principle that is stated in Commissioner Mason's dissent in the commission's decision And also based upon the theory that if you have an idiopathic fall and the conditions of your employment increase the risk of an accident or increase the risk of injury, that that takes an idiopathic fall. And because there are enough ties to employment risks, it's still a compensable accident. Well, how far do you take that? I mean, it comes to mind, what about if some employee of a grocery store is standing there putting some cans on a shelf and has a seizure? According to your analysis, the act of putting the cans on the shelf would give rise to a compensable injury, right? I believe it would. Is that what the act is supposed to provide? Well, if... I mean, that would be like a strict line, but you would be saying that no matter, if you're standing at work, no matter how you end up getting hurt, even if you trip over your own feet, you're going to automatically recover because you're connected to the job, according to your argument. Well, clearly, if I'm in my office standing there doing nothing and I faint or I have a heart attack and they find me dead in the middle of the office, that would not be a compensable accident because there's nothing tying what happened to me to my employment. But in this case... What if you have a heart attack while you're pushing the carts or a heart attack while you're standing there looking at a shelf? If you could prove that the heart attack was in no way related... Well, if you could prove that the heart attack was caused by the exertion of pushing those carts, then I believe that would be a compensable case. Good. Now, where's that evidence? Yeah. Hypothetically, where's the evidence? Well, the petitioner in this case didn't have a heart attack. She was pushing the carts and... She'd fallen down. And that she didn't know what caused her to fall. That's what the arbitrator found. Well, I don't believe that the evidence supports that conclusion. I think that she testified she was... Repeatedly testified that she was pushing the carts, holding onto the carts when she fell. If that's correct, that is an accident. If she had fainted in some way while she was doing that, which I don't think is supported by the accident, I still believe it's a compensable accident because she's in the act of pushing multiple carts, which places her at an increased risk of injury. She's also pushing these carts near a metal shelf. So in the stocking with shelves example, if she falls into the shelving and sustains an injury by those shelves, I think that, yes, that would take her into a... Here's the missing link in your analysis. Let me really stop and give a careful thought. You seem to be saying that as long as the person was doing something job-related and then there's some kind of something happens to them, whatever it is, it's automatically compensable, even if there was another cause totally independent of and had nothing to do with the act at work. You're saying, well, she's pushing the carts, therefore it doesn't matter whether she fell because of some other independent medical condition. She automatically recovers. The act speaks for itself. Is that what the law provides? But I think in this case it's totally speculative to say that something else caused her to fall. I think the evidence, based on her testimony and what she told her primary doctor, Dr. Zesevic, on February 28th, and then the neurologist Dr. Appleby on March 4th of 2002, she said that she was injured pushing the carts. I think that that is enough to sustain our burden to prove that she had an accident while pushing those carts. But what does pushing the carts have to do with anything? Pushing carts, stacking shelves. Did she trip, as my learned colleague said? Did she fall? Did she stumble? Did she run into a cart? Well, she slipped and fell while she was pushing those carts into the other carts. There's evidence in the record that say that what caused the fall, though. What caused her to slip and fall? The only evidence is from the petitioner. No one witnessed this accident. Well, yeah, and she testified she slipped. What did she slip and fall and, more to the point, what was the approximate cause of the slip and the fall? She says she didn't know what caused her to fall. But if she's pushing the carts, that's what caused her to fall. The seizure caused her to fall, not the carts. Nothing to do with the carts. But there's no evidence that she has a seizure disorder. She testified to two things. First, she testified that she'd finished pushing the carts when she fell. And later she testified that she was still hanging on when she fell. So the arbitrator found that she'd finished pushing. And keeps saying she doesn't know what she fell on or what caused her fall. Well, I believe that four times she did testify that what caused her to fall was the pushing of the carts. She never said that. She said she was pushing the carts. In the contradiction that's pointed out by the circuit court where this is the fourth time that she's asked the same question. And at that point she says, the question I think was were you through pushing the carts? And she said yes. But then this was on cross-examination. The other attorney asked, so you were finished pushing the carts? And then he said her testimony was I was pushing the carts. I probably slipped. I know because I was pushing the carts. I know that when I slipped my hands were on the cart. And that matches what she said when she was asked the same question three earlier times. Your Honor, I believe that if you accept the petitioner's testimony, we have sustained our burden of proof that she sustained an accident arising out of her employment. And I ask you to reverse the earlier decisions with regard to accident. Thank you, counsel. Counsel, please. May it please the court, counsel. My name is Mary Sabatino on behalf of Respondent Walmart. We are here requesting that this court affirm the circuit court's decision in its entirety. The circuit court found that the plaintiff in this case sustained an idiopathic fall and was not exposed to any greater risk as a result of the fall, and therefore that her accident did not arise out of her employment. It is within the province of the commission, as you know, to decide factual issues, assess the credibility of witnesses, and that's what they did in this case. Here they found the plaintiff was not a credible witness. Her history of the accident changed on multiple occasions throughout the testimony, at one point saying she was pushing five to six carts, and another time during the same trial that she had finished pushing carts when she fell. Emergency room records indicate she doesn't recall what happened to her. The undisputed facts found by the commission and the circuit court are that there were no defects. She fell on a carpeted area of the store open to the general public, and when her manager came upon her, she was unconscious and there was nothing around her. The metal shelf that the plaintiff refers to in her brief, the manager testified it was four feet away from her, and the shopping carts were nowhere around her. She was just lying in the middle of this floor. The floor was not found to be water-slippery, and she was wearing rubber-soled shoes. What about the fact she's pushing five or six carts? I mean, is the general public generally pushing five or six carts? I mean, you're making the argument, or you can make the argument, that was she exposed to a greater risk than the general public? Does somebody shopping at Walmart usually push five or six carts at the same time, or do they push one cart? They may push one cart, but I think here what's important is that that was only one of her multiple histories given to the court. So the court didn't actually say, the commission didn't find that she was pushing five to six carts. They said, really, that was just one of the histories given, and their conclusion was, based on the record, she wasn't pushing carts. When she goes to the emergency room, she says, I don't recall what happened to me. That was immediately following her fall at work. So really, could she have been pushing five to six carts? Possibly that's one inference that could be taken from the record, but the commission looked at the record as a whole and said she wasn't pushing five to six carts. She was finished pushing, just fell on her own in the middle of the floor. Also, when she went to the emergency room, she was diagnosed with a syncope attack or a seizure, which is really similar to the facts in the Oldham v. Industrial Commission case, which Respondent said it in its brief. There, the person was a kitchen worker. She's finished working. She's walking away, and she trips and falls. No defect at all on the floor. The floor wasn't slippery or wet, and she goes to the emergency room, and she was diagnosed with a syncope attack. So the facts are really almost identical in that regard. And that was under an idiopathic fall analysis. Even under an unexplained fall analysis, there still has to be some employment-related risk. So even if you look at it from the Builder Square case, which those facts are pretty similar also. The person stumbles back, falls in the concrete area, open to the store, no defects on the floor, and the Court says, well, it's an unexplained fall, but it's not compensable because there's no employment-related risk. Is this an unexplained fall? You have to believe it. But somebody's pushing five or six carts. Couldn't they, by the sheer force of having to push the carts, fall, slip and fall, without any defect in the carpet or on the sidewalk or anything? Somebody's struggling of small stature, trying to push five or six carts, might slip. The carts get ahead of them because they're pushing, and they fall down. Is that not compensable? I don't believe it's compensable. I think the case is better examined under the idiopathic fall analysis really because of this diagnosis of a syncope attack or a seizure. So it was something internal, personal to her, personal weakness, and this is what causes the fall. It wasn't the act of pushing the carts. And really there's no testimony that said the act of pushing the carts or I tripped on a cart. That's not what the testimony was. The testimony was I slipped. But really there was nothing wrong with the floor whatsoever, not slippery, not wet, carpet, rubber-soled shoes, and she tumbles and can't explain why. Now, plaintiff and her brief relied on certain cases. One was the one that the dissenting commissioner noted, the Irvin case, but that involved a fire pit. So I feel like our facts are drastically different there. The claimant, it was an idiopathic fall, but they fall into a fire pit right next to it and they're burned. So here, really, when she's found, when the manager comes upon her, there's nothing even around her that suggested she would have knocked into something. So there's no shopping carts around her, and the metal shelf, again, the testimony from the manager was that it was four feet away. So as far as an increased risk, there doesn't exist one here like there did in Irvin with the fire pit. The other case also cited in the plaintiff's brief is that Illinois consolidated case, but there where the court made or found a compensable accident based on the personal comfort doctrine, they weren't really doing the full analysis under an idiopathic fall. The person was going to and from the bathroom when they fell, and they said, well, under the personal comfort doctrine, we'll find this to be a compensable accident. The plaintiff has alleged that there was anything, you know, personal about her slip and fall. In this particular case, the personal comfort doctrine just would not apply. I think plaintiff's reliance on that case is simply misplaced. Plaintiff is also asking for some deference as far as not being found a credible witness because she was using a translator. Again, plaintiff cites no cases to support that proposition. Similarly, I believe the line in the plaintiff's brief was that, you know, the petitioner was not a professional witness. I'm not entirely sure what that means. We're in workers' compensation proceedings. Petitioners are not typically professional witnesses. They're just asked to tell the truth. And in this case, she had so many different histories of the accident that the commission drew a reasonable inference and said she wasn't pushing cards when she fell. Based on the record as a whole and based on the fact that we're under the manifest weight of the standard in this court, we're requesting affirmance of the circuit court's decision. Thank you. Thank you. Mr. Butler? Your Honor, just a brief point. I think the employment-related risk is pushing the multiple cards. That's all I have, unless you have any further questions. Thank you. Thank you, counsel. The court will take the matter under guidance for disposition.